Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 0442 | **DATE** | 6/14/2000 |
| **CASE TITLE** | FRANCISCA RIVERA vs. GROSSINGER AUTOPLEX, INC., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Motion to Dismiss

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  The motions to dismiss [16-1 and 19-1] are granted in part and denied in part. Counts III and IV are dismissed without prejudice. Count V is dismissed with prejudice. The motion is denied in all other respects. Defendants shall answer the remaining claims by June 23, 2000.  ENTER MEMORANDUM OPINION AND ORDER.

*/s/ Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUN 19 2000 | |
| | Notified counsel by telephone. | | date docketed | 30 |
| | Docketing to mail notices. | | IS | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 6/14/20007 | |
| | | | date mailed notice | |
| jad | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FRANCISCA RIVERA, )
                     Plaintiff, )
                              ) No. 00 C 0442
v. )
                              ) Suzanne B. Conlon, Judge
GROSSINGER AUTOPLEX, INC., UNION )
ACCEPTANCE CORP. and UNION )
ACCEPTANCE FUNDING CORP., )
                     Defendants. )

## MEMORANDUM OPINION AND ORDER

Francisca Rivera sues Grossinger Autoplex, Inc. ("Grossinger"), Union Acceptance Corporation and Union Acceptance Funding Corporation (collectively "Union") for violations of the Truth in Lending Act, 15 U.S.C. §1601 et. seq ("TILA") and Illinois statutes in a class action complaint. The dispute arose out of Rivera's purchase of a used car from Grossinger and the assignment of the financing to Union. In her first amended complaint, Rivera alleges that by including a charge for debt cancellation in the "amount financed" rather than the "finance charge" in her financing agreement Grossinger and Union violated TILA (Counts I and III). She alleges Grossinger and Union violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. ("ICFA") (Counts II and IV), and that Union violated the Illinois Sales Finance Agency Act, 205 ILCS 660/1 et. seq. ("SFAA") (Count V). Grossinger moves to dismiss Counts I and III, and Union moves to dismiss Counts II, IV and V, pursuant to Fed. R. Civ. P. 12(b)(6).

## BACKGROUND

For purposes of a motion to dismiss, the court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in plaintiff's favor. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1429 (7th Cir. 1996). Rivera purchased a 1995 Chevrolet Lumina automobile from Grossinger's dealership in Lincolnwood, Illinois on January 25, 1999. As part of the transaction, Rivera signed a retail installment contract ("the contract") and an addendum to the contract. In the section of the contract entitled "Itemization of Amount Financed," a $500 charge was listed for "GAP." This charge was included in the figure of $13,570.25 for the "amount financed" on the contract, and not in the $8,240.11 "finance charge." The $500 GAP charge was for debt cancellation coverage. Debt cancellation coverage, which is commonly referred to as GAP, provides for the cancellation of all or part of any loan deficiency that may remain if insurance on collateral is insufficient to pay off the loan when subject to a covered loss. The addendum provides that the term of GAP coverage is 78 months and that the maximum term permitted for GAP coverage is 72 months. On the addendum, the GAP coverage term is identified as "Term (Max. 72 most) _78_." The number "78" appears to be typed into the blank after "Term (Max. 72 most) __," which was part of the printed addendum. Am. Compl. Ex. B. In the section entitled "AGREEMENT," the addendum states "[although not required to do so, YOU have elected to participate in this Financial GAP Program." Id. In the section entitled "ENROLLMENT," the addendum reads "YOU understand and agree that YOUR acceptance or rejection of enrollment in the Program is voluntary and is not a condition precedent to, or a consideration required to obtain credit." Id. Rivera signed the contract and the addendum. Grossinger then assigned the contract, including the addendum, to Union.

2

## DISCUSSION

**I       Motion to dismiss standard**

In ruling on a motion to dismiss, the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." Bartholet v. Reishauer A.G., 953 F.2d 1073, 1078 (7th Cir. 1992)(citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). A motion to dismiss tests the sufficiency of the complaint, not its merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). A complaint is not required to allege all, or any, of the facts supporting a claim. Bennet v. Schmidt, 153 F.3d 516 (7th Cir. 1998). All that is required is a short and plain statement showing that plaintiffs are entitled to relief. Fed. R. Civ. P. 8(a); Doherty v. City of Chicago, 75 F.3d 318, 322 (7th Cir. 1996). Any ambiguities in the complaint are construed in plaintiffs' favor. Kelley v. Crosfield Catalysts, 135 F.3d 1202, 1205 (7th Cir. 1998). A claim may be dismissed only if it is beyond doubt that under no set of facts would a plaintiff's allegations entitle her to relief. Travel All Over the World, Inc., 73 F.3d at 1429.

**II      TILA violations**

    **A       Allegations against Grossinger**

The purpose of TILA is to enable the consumer to readily compare various available credit terms and to avoid the uninformed use of credit, as well as to protect the consumer against inaccurate and unfair credit billing and credit card practices. 15 U.S.C. §1601(a); *see also* Gibson v. Bob Watson Chevrolet-Geo, Inc., 112 F.3d 283, 285 (7th Cir. 1997) (TILA's purpose is to protect consumers from being misled about the cost of credit). To effectuate this purpose, TILA requires creditors to clearly disclose to consumers any finance charge that the consumer will bear under the credit transaction. *See* 15 U.S.C. §1638(a)(3); Walker v. Wallace Auto Sales, Inc., 155 F.3d 927, 930 (7th Cir. 1998). All

TILA disclosures must be accurate and lenders are generally held strictly liable for inaccuracies, even absent a showing that the inaccuracies are misleading. Smith v. Cash Store Management, Inc. 195 F.3d 325, 328 (7th Cir. 1999). "These stringent disclosure requirements are designed to prevent creditors from circumventing TILA's objectives by burying the cost of credit in the price of the goods sold." Walker, 155 F.3d at 930.

TILA defines a "finance charge" as the "sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit" 15 U.S.C. §1605(a). Under the regulations implementing TILA, generally termed "Regulation Z," 12 C.F.R. §226.1, et. seq., voluntary debt cancellation fees, or GAP coverage, may be excluded from "finance charges" only if specific requirements are met. Section 3 of Regulation Z provides:

> Charges or premiums paid for debt cancellation coverage . . . may be excluded from the finance charge, whether or not the coverage is insurance, if the following conditions are met:
> (A) The debt cancellation agreement or coverage is not required by the creditor, and this fact is disclosed in writing;
> (B) The fee or premium for the initial term of coverage is disclosed. If the term of coverage is less than the term of the credit transaction, the term of coverage also shall be disclosed. . . .
> (C) The consumer signs or initials an affirmative written request for coverage after receiving the disclosures specified in this paragraph.

12 C.F.R. §226.4(3). Regulation Z further requires that "[t]he creditor shall make the disclosures required by this subpart clearly and conspicuously." 12 C.F.R. §226.17. The "sufficiency of TILA-mandated disclosures is to be viewed from the standpoint of an ordinary consumer, not the perspective of a Federal Reserve Board member, federal judge, or English professor." Cemail v. Viking Dodge, 982 F.Supp. 1296, 1302 (N.D. Ill. 1997).

The parties do not dispute the underlying facts or the language of the contract. The issue is whether the contract properly included the charge for GAP coverage in the "amount financed" rather than the "finance charge" under TILA. Rivera claims the GAP amount was improperly excluded from the finance charge because the contract and addendum fail to meet the strict disclosure conditions for exclusion of debt cancellation fees required by Regulation Z. Grossinger contends it properly included the amount for GAP coverage in the amount financed because all the conditions for excluding GAP coverage from the finance charge were met. Grossinger concludes that because it met the disclosure conditions, it did not violate TILA as a matter of law.

The language of the contract and addendum do not support Grossinger's conclusion. Grossinger failed to clearly and conspicuously disclose the term of GAP coverage as required by 12 C.F.R. §226.4(3)(i)(B). The term of the retail contract was 78 months. However, the only section of the addendum that indicates a term of coverage reads "Term (Max. 72 most) 78 ." It is unclear from this language whether the term of GAP coverage was 72 or 78 months. This conclusion is bolstered by the fact that although Grossinger and Union both claim the term was clearly disclosed, they disagree over the length of the GAP term. In its brief, Grossinger contends "[t]he GAP Addendum discloses that the maximum term of GAP coverage is 72 months." Mem. at 4. Union claims the addendum clearly disclosed the term of GAP coverage, but it contends the term was 78 months, not 72. In its reply brief, Union asserts "[t]he disclosed term of GAP coverage is 78 months; the filled-in blank discloses '78.'" Reply Mem. at 6. In light of this uncertainty, the court cannot conclude that the addendum clearly disclosed the term of GAP coverage. If the term of GAP coverage was 72 months, this term was shorter than the term of the retail contract and under Regulation Z should have been clearly and conspicuously disclosed. Because it was not, Grossinger

fails to establish that it complied with the requirements of Regulation Z and has not shown it complied with TILA as a matter of law.[1] Accordingly, Grossinger's motion to dismiss Count I of the complaint must be denied.

## B  Allegations against Union

Grossinger's failure to show that it adequately complied with TILA's disclosure requirements does not necessarily mean Union is also liable. Under 15 U.S.C. §1641(a), an assignee is liable for TILA violations only where the violation is apparent on the face of the documents assigned. *See* Taylor v. Quality Hyundai, Inc., 150 F.3d 689, 692-93 (7th Cir. 1998). "For the purposes of this section, a violation apparent on the face of the disclosure includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned . . ." 15 U.S.C. §1641(a). Union claims that even if Grossinger violated TILA, Union is not liable because the violation was not apparent on the face of the documents Grossinger assigned to it.[2]

Union's argument against assignee liability is without merit. The face of the contract reveals that the GAP coverage amount was excluded from the finance charge and was included as part of the amount financed. The face of the addendum shows that the requirements for excluding the charge from the finance charge under Regulation Z are not satisfied. As discussed above, it is unclear

---

[1] In making this determination, the court does not address whether the contract and addendum meet other disclosure requirements under Regulation Z.

[2] Union was granted leave to file a reply memorandum. Arguments and legal theories made in the original motion to dismiss are considered. However, the court will not consider any arguments or legal theories presented for the first time in reply. *See* United States v. Feinberg, 89 F.3d 333, 340-41 (7th Cir.1996) ("the reply brief is not the appropriate vehicle for presenting new arguments or legal theories to the court").

6

whether the GAP coverage term is 72 or 78 months. The contract term is clearly stated as 78 months but the GAP term reads "Term (Max. 72 most) 78 ." A quick reading of the addendum reveals this inconsistency. In short, it is apparent from the face of the retail contract and addendum that the required term disclosure is incomplete or inaccurate. Thus, Union may be liable for the TILA violations as assignee of the retail contract under 15 U.S.C. §1641. Accordingly, Union's motion to dismiss Count II must be denied.

### III ICFA claims against Grossinger and Union

In Counts III and IV, Rivera alleges Grossinger and Union violated the ICFA by failing to properly disclose the terms of the GAP coverage. The ICFA requires a plaintiff seeking relief from a car dealer, or assignee of the contract, to serve a written notice of the nature of the alleged violation and demand for relief at least thirty days prior to filing suit. *See* 815 ILCS 505/10a(h) ("section (h)"). Grossinger and Union claim Rivera's ICFA claims should be dismissed because she failed to provide notice and demand for relief prior to filing this action as required by section (h). Rivera contends that pre-filing statutory notification requirements have now been satisfied and her failure to comply earlier does not warrant dismissal.

Defendants' argument is persuasive. It is undisputed that Rivera did not provide notice to either Grossinger or Union before filing this suit. Similarly, she did not certify in her complaint that a written notice demanding relief was served on defendants. Thus, it is clear that Rivera did not meet the statutory notice requirements of section (h). Dismissal is warranted under such circumstances. *See* McNair v. McGrath Lexus-Colosimo, Ltd., 11 F.Supp.2d 990, 992 (N.D. Ill. 1998) (plaintiff's ICFA claims dismissed for failure to meet notice requirement of section (h)).

The fact that Rivera sent letters giving notice and making demand for relief to defendants after filing suit does not alter this conclusion. The purpose of section (6) is to encourage early settlement. Under section (h), a party who receives a demand for relief may submit a written offer of settlement within thirty days. Id. Section (h) further provides "[t]he party seeking relief must certify in any cause of action that the notice and demand was served upon the named defendants and the substance of their response, if any." Id. If the settlement offer is rejected, "then, in any subsequent action, the court shall deny any award of attorney's fees and costs requested by the party seeking relief under this Act incurred after the rejection of the written offer of settlement, if the judgment is less than the amount contained within the offer of settlement." Id. By failing to provide notice and demand before filing suit, Rivera deprived defendants of the opportunity to settle the dispute before litigation. Similarly, Rivera denied defendants the chance to limit their liability for her attorneys fees and costs in the event of trial. In short, providing notice after filing a complaint does not cure Rivera's failure to abide by the statutory requirement.

Rivera relies on Pigounakis v. Autobarn Motors, 1999 WL 754927, * 2 (N.D. Ill 1999) to establish that failure to abide by the requirements of section (h) does not warrant dismissal of the complaint. In Pigounakis, plaintiff sued a car dealer, its general manager and an assignee for ICFA violations and provided notice to the dealer. Pigounakis, 1999 WL 754927 at * 2. In denying the general manager's motion to dismiss for lack of notice under section (h), the court noted that it was unclear whether plaintiff was required to give notice to the general manager and indicated that, absent guidance from the state courts, it declined to treat failure to issue notice as an absolute bar to bringing claim in court. Id. However, Pigounakis is not persuasive. The court did not address McNair, did not undertake any analysis of the statute and did not rely on its section (h) conclusion as the sole basis

8

for the decision. Furthermore, Pigounakis is distinguishable on the facts. Rivera did not provide notice or demand to any of the defendants. Under the circumstances, Pigounakis does not warrant denial of defendants' motions. Rivera clearly failed to meet the notice requirements of section (h). *See* McNair, 11 F.Supp.2d at 992. Accordingly, Counts III and IV must be dismissed.

## IV    SFAA allegations against Union

In Count V, Rivera claims Union violated the SFAA, 205 ILCS 660/8.4, by purchasing a retail contract that on its face violates the Illinois Motor Vehicle Retail Installment Act, 815 ILCS 375/1 et. seq. ("the MVRIA"). Union contends Count V should be dismissed because there is no private cause of action under §8.4 of the SFAA. Union further contends the contract did not, on its face, violate the MVRIA and that Rivera has not alleged she suffered any actual damages as required to state a claim under the SFAA.

Union is correct. There is no indication in the statute that there is a private cause of action for violations of §8. The SFAA regulates who may properly engage in the business of a sales finance agency in Illinois. *See* 205 ILCS 660/1 et. seq. The act requires anyone who engages in the sales finance agency business to obtain a license. 205 ILCS 660/3. It also sets up procedures for obtaining, renewing and revoking licenses and contains criminal and civil consequences for those who conduct business without a license. *see* 205 ILCS 660/3-15.5. Section 8 of the SFAA deals with the grounds for denial, suspension or revocation of licenses. Section 8 provides:

> The [Department of Financial Institutions] may deny an application for a license, deny an application for renewal of a license, or suspend or revoke a license on any of the grounds listed in Sections 8.1 through 8.14.

205 ILCS §660/8. Subsections 8.1 through 8.14 delineate conduct for which the department may refuse, suspend or revoke a license. In essence, the subsections simply list criteria considered in licensing decisions. There is no indication that the conduct described in subsections 8.1 through 8.14 is prohibited by the act in general. For example, subsection 8.4 simply states "[e]xcept for an honest mistake, purchase of any retail contract, retail charge agreement, or evidence of indebtedness thereunder, that on its fact violates this Act, the Retail Installment Sales Act or the [MVRIA]." In short, the subsections 8.1 through 8.14 describe conduct that can lead to adverse licensing decisions. Accordingly, engaging in behavior described in the subsections does not trigger a private cause of action under the SFAA.

Rivera contends there is a cause of action for violations of §8 because the SFAA explicitly provides a private right of action in §15.5. Section 15.5 states: "[a] claim of violation of this Act may be asserted in a civil action." Rivera's reliance on this provision is misguided. Section 15.5 creates a private cause of action only for violations of the act, such as operating a sales finance agency business without a license. The SFAA does not prohibit the conduct described in subsections 8.1 through 8.14. The cause of action created in §15.5 does not authorize a private cause of action for engaging in conduct described in §8.4.

Similarly, <u>Dixon v. Mercury Finance Co. of Wisconsin</u>, 694 N.E.2d 693 (2nd Dist. 1998) does not support Rivera's conclusion. In <u>Dixon</u>, the court dismissed plaintiff's action for failure to allege loss but acknowledged that there existed a private cause of action for violation of the SFAA. However, plaintiff alleged that defendant operated its business without a license, not for conduct set out in §8. Unlike the conduct listed in §8, operating without a license is explicitly prohibited under §3 of the SFAA. Rivera does not cite any authority that recognizes a private cause of action for

10

violation of §8 of the SFAA. Rivera's position is without support in either the language of the statute or case law. Accordingly, Count V must be dismissed.

## **CONCLUSION**

The motions to dismiss are granted in part and denied in part. Rivera's claims against Grossinger and Union based on violations of the ICFA (Counts III and IV) are dismissed without prejudice. Rivera's claim against Union based on violation of the SFAA (Count V) is dismissed with prejudice.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

June 14, 2000